UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
SHAWN W. BICKHAM,                          :
                        Plaintiff,       :
                                  :       **OPINION AND ORDER**
v.                                         :
                                  :       14 CV 3341 (VB)
COCA COLA REFRESHMENTS USA, INC.,          :
                      Defendant.       :
---------------------------------------------------------------x

Briccetti, J.:

       Plaintiff Shawn Bickham brings this diversity action against Coca Cola Refreshments USA, Inc., alleging he swallowed a foreign object while drinking a can of Coke Classic. Plaintiff asserts claims under New York law for negligence and breach of implied warranty.

       Before the Court is defendant's motion to preclude the testimony of plaintiff's expert and for summary judgment. (Doc. #39). For the following reasons, the motion is GRANTED to the extent it seeks to preclude plaintiff's expert, but DENIED insofar as it seeks summary judgment.

       The Court has subject matter jurisdiction under 28 U.S.C. § 1332.

## BACKGROUND

       The parties have submitted briefs, statements of facts, and affirmations with supporting exhibits, which reflect the following factual background.

       In the early morning hours of January 14, 2013, plaintiff was watching television in his home in Liberty, New York. He was very thirsty, as he had not had anything to drink for hours. He opened his refrigerator and saw a box of twelve cans of Coke Classic his fiancée had purchased from a gas station the day before. Plaintiff took one of the cans out of the box. The can had been filled at defendant's plant in Elmsford, New York, on November 19, 2012, and its "optimum date to be consumed by" was August 19, 2013. (Paz Aff. ¶¶ 32, 36). According to

plaintiff, he rinsed off the top of the can and then wiped it down, as he claims he does every time he drinks a can of soda.  At his deposition, plaintiff testified there was "nothing" on the top of the can when he "popped it open."  (Pl.'s Dep. at 37, 44).  Other than the can's mouth, there were no openings or perforations on the can.  (Gashinski Letter at 2).

Plaintiff testified he then began drinking from the can.  Plaintiff "was fine until [he] took [the] soda and started drinking."  (Pl.'s Dep. at 68).  But after he had finished about half the can, he felt something get caught in his throat.  According to plaintiff, it "felt like something poking and something just stuck, lodged right there, stuck from my—you know, my breathing was funny, my throat was feeling funny, and I knew something was in there."  (Id. at 47).  He tried to cough that "something" up but could not.

Over the next two days, plaintiff was treated by doctors at Catskill Regional Medical Center, Orange Regional Medical Center, and Crystal Run Healthcare, but none was successful in removing the object from plaintiff's throat.  Eventually, about a week after the incident, plaintiff coughed the object up.

The object was a "dried, brittle mass," approximately 0.3 millimeters by 2.5 millimeters, consisting of carbon, oxygen, magnesium, calcium, potassium, chlorine, sodium, sulfur, phosphorous, and silicon.  (Gashinski Letter at 2-3).  The object was not metal.

According to defendant's experts, the object could not possibly have come from inside the can because it was too large to pass through the filters used at the Elmsford plant, which are designed to prevent foreign objects from entering cans before the cans are sealed.  (Gashinski Letter at 5; Paz Aff. ¶ 45).

After coughing up the object, plaintiff taped it to a piece of paper and gave the paper, as well as the still half-full can of Coca-Cola, to his attorney.  The soda remaining in the can was later discarded.  Plaintiff's fiancée, at his direction, threw out the other eleven cans.

## DISCUSSION

I.    <u>Standard of Review</u>

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law. . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  <u>See id</u>.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." <u>Wilson v. Nw. Mut. Ins. Co.</u>, 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  <u>Zalaski v. City of Bridgeport Police Dep't</u>, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 249-50.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to

the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted).  The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. Cty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper.  See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial.  Nora Bevs., Inc. v. Perrier Grp. of Am. Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II.     Negligence Claim

To prevail on his negligence claim under New York law, plaintiff must show (i) defendant owed him a duty; (ii) defendant breached that duty; and (iii) he suffered injuries proximately caused by the breach.  Stagl v. Delta Airlines, 52 F.3d 463, 467 (2d Cir. 1995). Only the second and third elements are at issue here, as defendant concedes "a seller of products intended for human consumption is under a duty adequately to prepare, inspect and package its food product."  (Def.'s Br. at 16 (quoting Herbenson v. Carrolls Corp., 2010 N.Y. Misc. LEXIS 7005, at *2 (Sup. Ct. Schenectady Cty. Oct. 7, 2010))).

Plaintiff seeks to prove breach through the testimony of Darrel Suderman, Ph.D., whom he offers as an expert witness.  Defendant asks the Court to preclude Dr. Suderman's testimony.

As explained below, the Court agrees with defendant that Dr. Suderman's testimony must be precluded; however, there is sufficient evidence for plaintiff to establish a prima facie case of negligence under a res ipsa loquitur theory.  Accordingly, defendant is not entitled to summary judgment on plaintiff's negligence claim.

    A.    <u>Dr. Suderman's Testimony</u>

Under <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 597 (1993), trial courts serve as gatekeepers for expert testimony.  Trial courts may decide whether expert testimony is admissible in ruling on a motion for summary judgment.  <u>Raskin v. Wyatt Co.</u>, 125 F.3d 55, 66 (2d Cir. 1997).

Rule 702 of the Federal Rules of Evidence provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's testimony (i) is based on sufficient facts or data; (ii) is the product of reliable principles and methods; and (iii) has reliably applied the principles and methods to the facts of the case.  <u>See</u> Fed. R. Evid. 702.  Thus, "Rule 702 requires a trial court to make an initial determination as to whether the proposed witness qualifies as an expert.  If this threshold requirement is met, then a court must inquire into whether the scientific, technical or other specialized testimony provided by that expert is both relevant and reliable."  <u>Baker v. Urban Outfitters, Inc.</u>, 254 F. Supp. 2d 346, 352-53 (S.D.N.Y. 2003).

"Under <u>Daubert</u> and Rule 702, expert testimony should be excluded if the witness is not actually applying expert methodology.  Incorporating the <u>Daubert</u> standard, the amended Rules of Evidence require that expert testimony be based on 'sufficient facts or data' and on 'reliable

principles and methods' that the expert 'witness has applied reliably to the facts of the case.'"
United States v. Dukagjini, 326 F.3d 45, 54 (2d Cir. 2003) (quoting Fed. R. Evid. 702).

The proponent of expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence.  Baker v. Urban Outfitters, Inc., 254 F. Supp. 2d at 353. "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert."  Id. (quoting Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)).

Here, even assuming Dr. Suderman is qualified to offer an expert opinion in this case, his testimony must be precluded.

Dr. Suderman sets forth his opinions in two reports, one dated January 22, 2015 (the "January Report"), the other May 14, 2015 (the "May Report").  The January Report contains the following opinions:

- The documents produced by defendant in this case are "incomplete" and "evasive" because they do not include (i) the Elmsford plant's "production records" from January 14, 2013 (the date of the incident), (ii) "Hazard Analysis Critical Control Points" or food safety log sheets, or (iii) "Standard Sanitation Operating Procedures" or "Current Good Manufacturing Practices." (January Report ¶¶ 1, 2, 5).

- Dr. Suderman lacked sufficient documentation to determine whether "production jams" noted in certain documents could have contributed to the object making its way into the soda can.  (Id. ¶ 6).

- The object is "unusually large by food industry standards," and defendant could have identified it using x-ray detection.  (Id. ¶¶ 3, 4).

- Defendant was "negligent" in failing to fill out the column entitled "Action Taken" on the "Hourly Line Issues" forms produced in this case.  (Id. ¶ 7).

None of these opinions is admissible.  At his deposition, Dr. Suderman admitted he has no knowledge of "what processes were in place" at the Elmsford plant "with regard to the production of Coke Classic," and he lacks "any personal or professional information as to how

Coca Cola runs and manages it[s] production lines in Elmsford, New York." (Suderman Dep. at 19-20).  Nor does Dr. Suderman have any knowledge about how defendant generally manufactures its products.  (See id. at 20).  Indeed, Dr. Suderman has never worked for any soft drink company or in any facility in which soft drinks are produced.  (Id. at 19, 49).  Accordingly, without "sufficient facts or data" about either the processes that were actually used at the Elmsford plant on November 19, 2012 (the day the can at issue was filled) or the processes used at defendant's plants in general, Dr. Suderman cannot possibly offer relevant and reliable expert opinions about whether defendant was negligent in this case.  United States v. Dukagjini, 326 F.3d at 54.  He even admitted as much.  (Suderman Dep. at 117 ("I can't make a judgment about whether the [object] entered the can[] because I don't have adequate production sheets.")).  Thus, Dr. Suderman's testimony on the opinions expressed in the January Report is inadmissible.

As for the May Report, the Court will not consider the opinions therein—which relate to the object's composition and possible origin—because that Report is untimely.[1]

The deadline for plaintiff's counsel to serve an expert report was January 23, 2015 (Doc. #20),[2] and the deadline to complete expert discovery was April 10, 2015.  (Jan. 30, 2015, Tr. at 13).  The latter deadline was set by Magistrate Judge Paul E. Davison, to whom the Court had referred a dispute concerning expert discovery.  (Doc. #21).  Judge Davison advised plaintiff's counsel he would be willing to extend the April 10 deadline if, in light of the testing he had allowed defendant's expert to perform on the object, plaintiff's counsel believed a supplemental

---

[1]      Nor will the Court consider Dr. Suderman's July 28, 2015, affidavit (Doc. #50-5), which was submitted in opposition to the pending motion and rehashes the opinions in the May Report. Plaintiff may not circumvent the expert discovery deadlines by presenting an untimely expert report in the form of an affidavit in opposition to a summary judgment motion.

[2]      It bears noting the Court twice extended this deadline after plaintiff's counsel—without any explanation whatsoever—did not timely disclose an expert report.  (Docs. ##13, 20).

report was needed.  (Jan. 30, 2015, Tr. at 10-11).  But plaintiff's counsel never sought an

extension.  Instead, she simply filed the May Report on July 29, 2015, when she filed plaintiff's

opposition to the pending motion (Doc. #50-4)—nearly four months after the close of expert

discovery.

Untimely expert submissions should be disregarded "unless the proponent of the

evidence can demonstrate that his delay in complying with the required deadlines was

substantially justified or that it was harmless, that is, that it did not prejudice the other side."

Capitol Records, LLC v. Escape Media Grp, Inc., 2015 WL 1402049, at *25 (S.D.N.Y. Mar. 25,

2015) (internal quotation marks omitted); accord Lava Trading, Inc. v. Hartford Fire Ins. Co.,

2005 WL 4684238, at *8 (S.D.N.Y. Apr. 11, 2005) ("[U]ntimely produced evidentiary materials,

including expert submissions, are subject to near automatic exclusion.") (internal quotation

marks omitted).  Plaintiff's counsel has offered no justification, let alone a substantial one, either

for ignoring the expert discovery deadline or for not seeking an extension.  Nor can it be said

counsel's failure to adhere to that deadline was harmless, as defendant "has been forced to

pursue . . . motion practice, only to receive an altered [expert] presentation long after the close of

[expert] discovery and long after defendant had already obtained an analysis by its own expert."

Lava Trading, Inc. v. Hartford Fire Ins. Co., 2005 WL 4684238, at *8.

Accordingly, plaintiff may not rely on the opinions in the May Report to prove his

negligence claim.

Nevertheless, drawing all reasonable inferences in plaintiff's favor, there is enough

evidence to hold defendant liable for negligence under a res ipsa loquitur theory.  The Court

considers that theory below.

B.     Res Ipsa Loquitur

Res ipsa loquitur is "an evidentiary doctrine that allows 'an inference of negligence to be

drawn solely from the happening of the accident upon the theory that certain occurrences contain

within themselves a sufficient basis for an inference of negligence.'" Cty. of Erie v. Colgan Air,

Inc., 711 F.3d 147, 149 n.1 (2d Cir. 2013) (quoting Dermatossian v. N.Y.C. Transit Auth.,

67 N.Y.2d 219, 226 (1986)).  To invoke the doctrine, plaintiff must show "(1) the event was of a

kind which does not ordinarily occur in the absence of someone's negligence; (2) it was caused

by an agency or instrumentality within the exclusive control of the defendant; and (3) it was not

due to any voluntary action or contribution on the part of plaintiff." Stone v. Courtyard Mgmt.

Corp., 353 F.3d 155, 157 (2d Cir. 2003).  "The rule has the effect of creating a prima facie case

of negligence sufficient for submission to the jury." Dermatossian v. N.Y.C. Transit Auth.,

67 N.Y.2d at 226.

Defendant contends res ipsa loquitur is inapplicable here because the Coca-Cola can at

issue was not in defendant's "exclusive control" at the time plaintiff drank from it, as the can

"had already left [defendant]'s facility in advance of being purchased by Plaintiff's fiancée at a

store shortly before he consumed it."[3]  (Def.'s Br. at 17 n.6).

---

[3]      As for the doctrine's other two requirements, there can be no dispute that, absent
someone's negligence, dried, brittle masses large enough to become lodged in a person's throat
are not ordinarily found in cans of Coca-Cola—particularly Coca-Cola that is less than two
months old and still seven months away from its "optimum date to be consumed by."  (Paz Aff.
¶ 32).  "Indeed, [defendant] has proffered no non-negligent explanation" for the object's
presence in the can. Coale v. Metro-North Commuter R.R. Co., 2015 WL 4170482, at *2 (2d
Cir. July 13, 2015) (summary order).  Nor can it be said the object ended up in the can as the
result of plaintiff's actions, given his testimony, which the Court must credit in deciding this
motion, see Kaytor v. Elec. Boat Corp., 609 F.3d 537, 549, 555 (2d Cir. 2010), that "nothing"
was on the top of the can when he "popped it open," and that his throat "was fine until [he] took
a soda and started drinking."  (Pl.'s Dep. at 37, 44, 68).

But "[t]he meaning given to exclusive control in the cases . . . is anything but consistent with what the requirement, on its face, would seem to demand."  Potthast v. Metro-North R.R., 400 F.3d 143, 149 n.7 (2d Cir. 2005); accord Dermatossian v. N.Y.C. Transit Auth., 67 N.Y.2d at 227 ("Courts do not generally apply this requirement as it is literally stated.") (internal quotation marks omitted).  Indeed, "exclusive control is not a rigid concept; rather, it is 'subordinated to its general purpose, that of indicating that it probably was the defendant's negligence which caused the accident.'"  Stone v. Courtyard Mgmt. Corp., 353 F.3d at 159 (quoting Corcoran v. Banner Super Market, Inc., 19 N.Y.2d 425, 432 (1967)) (emphasis in Stone).  Thus, the "exclusive control" requirement is satisfied as long as there is enough evidence to "allow[] a jury to exclude the actions of . . . third parties as significant causes of the injury."  Potthast v. Metro-North R.R., 400 F.3d at 151 n.9.  "The requirement does not mean that the possibility of other causes must be altogether eliminated, but only that their likelihood must be so reduced that the greater probability lies at defendant's door."  Dermatossian v. N.Y.C. Transit Auth., 67 N.Y.2d at 227 (internal quotation marks omitted).

Here, there is enough evidence for a jury to conclude the object found its way into the can as a result of defendant's, rather than a third party's, negligence.  Plaintiff testified he "popped [the can] open" before drinking from it (Pl.'s Dep. at 44), meaning the top was sealed at the time.  And defendant concedes the can had no other openings or perforations.  (Gashinski Letter at 2).  Certainly, if the can was sealed before plaintiff opened it, a jury could "exclude the actions of . . . third parties as significant causes" of injury.  Potthast v. Metro-North R.R., 400 F.3d at 151 n.9.

Indeed, several courts have allowed plaintiffs injured by sealed products to pursue negligence claims against the products' manufacturers under a res ipsa loquitur theory, even though the manufacturers did not have physical custody of the products immediately before they

were used.  See Becker v. Am. Airlines, Inc., 200 F. Supp. 839, 840 (S.D.N.Y. 1961)

(manufacturer who delivered altimeters under seal to third party could be held liable for

negligence under res ipsa loquitur); Asher v. Coca Cola Bottling Co., 112 N.W.2d 252, 255

(Neb. 1961) ("[T]he doctrine of res ipsa loquitur is applicable and raises an inference or

presumption of negligence on the part of the manufacturer or bottler of a beverage which, when

sold in a bottle, can, or other sealed container, contains a foreign substance."); Macon Coca-Cola

Bottling Co. v. Chancey, 114 S.E.2d 517, 521-22 (Ga. 1960) ("The almost inescapable

conclusion to be drawn from the existence of a foreign substance in a sealed can . . . is that such

substance must necessarily have been in the can at the time it was sealed.  This evidence alone

would be sufficient to carry the case to the jury, and the jury would be authorized to infer that the

manufacturer was negligent in the foreign matter's being there.").

     Rudloff v. Wendy's Restaurant of Rochester, 12 Misc. 3d 1081 (Buffalo City Ct. 2006),

and Radnay v. 1036 Park Corp., 17 A.D.3d 106 (1st Dep't 2006), upon which defendant relies,

are readily distinguishable, as in neither case was the injury caused by a sealed product.  In

Rudloff, the plaintiff broke a tooth while eating a double cheeseburger at a Wendy's restaurant,

12 Misc. 3d at 1083, while in Radnay the accident occurred as a result of a defective window,

17 A.D.3d at 107.

     Although defendant has offered evidence the object was so large it could not possibly

have escaped defendant's filtering process (Gashinski Letter at 5; Paz Aff. ¶ 45), this evidence

merely creates an issue of fact for trial; it does not override plaintiff's prima facie showing.  See

Kambat v. St. Francis Hosp., 89 N.Y.2d 489, 497 (1997) (defendants' evidence rebutting res ipsa

loquitur theory "did not disqualify this case from consideration under res ipsa loquitur," but

"merely raised alternative inferences to be evaluated by the jury in determining liability").

Nor would drawing an adverse inference against plaintiff for spoliation of evidence entitle defendant to summary judgment.  Defendant contends plaintiff's counsel spoliated evidence by discarding the soda remaining in the can from which plaintiff drank, and that plaintiff himself spoliated evidence by telling his fiancée to throw out the other eleven cans.  As a sanction for these alleged acts of spoliation, defendant asks the Court to infer the discarded evidence "would have been unfavorable" to plaintiff.  (Def.'s Br. at 10).  But even if the Court were to draw such an inference,[4] this inference would simply compete with, rather than supplant, the inference permitted by the doctrine of res ipsa loquitur.  "[C]hoosing between competing inferences is the province of the jury," not the Court on a motion for summary judgment. Wakefield v. N. Telecom, Inc., 813 F.2d 535, 541 (2d Cir. 1987); accord Gucci Am., Inc. v. Guess?, Inc., 843 F. Supp. 2d 412, 430 (S.D.N.Y. 2012) ("In a situation where the evidence supports competing inferences, summary judgment is not appropriate.").

In sum, plaintiff's testimony, if believed, constitutes sufficient evidence for a jury to hold defendant liable for negligence under a res ipsa loquitur theory.  To be sure, there is also evidence supporting the conclusion that the object was not inside the can, or, if it was inside the can, it got there after the completion of the manufacturing process.  Thus, there is a genuine issue of material fact, and defendant's motion for summary judgment on plaintiff's negligence claim must be denied.

III.    Implied Warranty Claim

Under New York law, "where an item of food intended for human consumption is sold, there is an implied warranty that the item is fit for human consumption and free from any harmful substance when it leaves the manufacturer's control."  Herbenson v Carrolls Corp., 2010

---

[4]    To be clear, the Court makes no finding about whether plaintiff or his counsel actually spoliated evidence.

N.Y. Misc. LEXIS 7005, at *2.  To prove a breach of this implied warranty, plaintiff must show "the food was defective and that h[is] injury resulted from its consumption."  Luna v. Am. Airlines, Inc., 578 F. App'x 58, 59 (2d Cir. 2014) (summary order) (internal quotation marks omitted).

Crediting plaintiff's deposition testimony, as the Court must at this stage, Kaytor v. Elec. Boat Corp., 609 F.3d at 549, 555, a reasonable jury could conclude defendant breached the implied warranty of fitness for human consumption.  Plaintiff testified the Coca-Cola can from which he drank on January 14, 2013, contained an object large enough to get stuck in his throat, and his throat "was fine until [he] took a soda and started drinking," at which point it began "feeling funny."  (Pl.'s Dep. at 47, 68).  This testimony is sufficient to show the soda was defective and he was injured as a result of its consumption.  Luna v. Am. Airlines, Inc., 578 F. App'x at 59.

Although defendant is correct that "[e]xpert evidence is required to prove causation in a breach of implied warranty claim where there are 'scientific and technical issues involved'" (Def.'s Br. at 12 (quoting Derienzo v. Trek Bicycle Corp., 376 F. Supp. 2d 537, 551 (S.D.N.Y. 2005))), this is not such a case.  One need not consider "scientific or technical issues" to determine the cause of plaintiff's alleged injury—it was the object he claims to have swallowed. Nor does plaintiff need expert evidence to prove the soda he drank was defective.  Whether or not a can of Coca-Cola should contain dried, brittle masses large enough to become lodged in a person's throat is not a topic beyond "the ken of the average juror."  Tiner v. Gen. Motors Corp., 909 F. Supp. 112, 117 (N.D.N.Y. 1995).

And as with plaintiff's negligence claim, evidence that the object was too large to have escaped defendant's filtering process and any adverse inference based on spoliation of evidence are not enough to take plaintiff's implied warranty claim away from a jury.

## CONCLUSION

Defendant's motion is GRANTED to the extent it seeks to preclude the testimony of plaintiff's expert; but the motion is DENIED insofar as it seeks summary judgment.

The Clerk is instructed to terminate the motion.  (Doc. #39).

The parties are directed to submit a joint pretrial order in accordance with the Court's Individual Practices by December 18, 2015.

Counsel are directed to attend a status conference on December 22, 2015, at 2:30 p.m., at which time the Court will schedule a trial date and set dates for pretrial submissions.

Dated:  November 18, 2015
       White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge